Submitted March 26, remanded for sentencing; otherwise affirmed July 15, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## BRIAN DEAN SMITH,
*Defendant-Appellant.*

Washington County Circuit Court
C061180CR; A134823

214 P3d 824

Peter Gartlan, Chief Defender, and Susan F. Drake, Senior Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Samuel A. Kubernick, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant appeals a judgment of convictions for criminal mistreatment in the first degree, ORS 163.205, and assault in the fourth degree, ORS 163.160. On appeal, he assigns error to the exclusion of evidence on relevance grounds under OEC 401 and to the trial court's refusal to merge his convictions. As discussed below, we affirm with regard to the trial court's exclusion of evidence. As to the trial court's refusal to merge convictions, the state concedes error, and we accept the state's concession, *State v. Rodvelt*, 187 Or App 128, 130, 66 P3d 577, *rev den*, 336 Or 17 (2003), and we therefore remand for resentencing.

Defendant was charged with striking, on April 24, 2006, the five-year-old son of a woman with whom defendant cohabited. Defendant maintained at trial that he had not struck the child. The child testified that he received the bruise that authorities observed on his cheek when defendant hit him several times with a closed hand. Defendant's counsel then told the trial court outside the presence of the jury that he intended to ask the child "if he ever recalled being mistreated at all by his natural father[.]" Counsel explained that he intended to impeach the child's testimony by proving that the child had been physically abused by his natural father and, as a result, that the child was confusing those events in his testimony with the accusation that he had made against defendant. Initially, defendant argued that some of the allegations that the child had made on a tape recording of an interview as part of a Child Abuse Response and Evaluation Services (CARES) evaluation were attributable to abuse by the child's father. The trial court ruled that, depending on what the child stated in the CARES interview, defendant "may be able to [recall the child] and [question him] about that." However, after the jury viewed the videotape of the CARES interview, defendant did not seek leave to recall the child and question him about any prior abuse attributable to his father.

Later in the trial, defense counsel indicated to the trial court that he wanted to offer evidence of abuse of the child by the child's father through the testimony of Hallyburton, an employee of the Department of Human Services (DHS).

Based on counsel's representations and the fact that the child's father had not had any contact with the child around the time that the child received the bruise, the court refused to allow defendant to examine Hallyburton on that issue. After the trial court ruled, defendant did not make an offer of proof regarding what Hallyburton would have testified. Defendant's failure to make an offer of proof effectively prevents him from claiming error on appeal regarding the trial court's ruling because, by failing to make an offer of proof, defendant failed to make an adequate record for appellate review. *State v. Bowen*, 340 Or 487, 500-01, 135 P3d 272 (2006), *cert den*, 549 US 1214 (2007).

The issue arose again during defendant's case when defendant presented testimony from the child's mother. Before her testimony, the state had called Pettitt, an employee of DHS, to testify. Pettitt's job was to transport foster children to meetings and appointments. Pettitt reported that, on one occasion when he was transporting the child, he heard the child talking about his natural father and defendant. According to Pettitt, the child told him that he "has them both confused in his mind and isn't sure who was who." However, the context of the statement is not apparent from the testimony.

After the state rested its case-in-chief, defendant called the child's mother to testify. She testified that she had not seen defendant strike the child and that the child had not told her that defendant had struck him. Defense counsel then obtained leave from the court to make an offer of proof through the testimony of the child's mother regarding what the child had told her about his father's abuse of him. During the offer of proof, the following questions and answers occurred.

"[DEFENSE COUNSEL:]   [Mother], I want to ask you, are you acquainted with [the child's father]?

"[MOTHER:]   Yes, I know him. Acquainted, I would— yes, I do know him.

"[DEFENSE COUNSEL:]   Is that your ex-husband?

"[MOTHER:]   He's an ex-boyfriend.

"[DEFENSE COUNSEL:] Now, did [the child] ever discuss with you things that were done to him by [his father]?

"[MOTHER:] Yeah, he has.

"[DEFENSE COUNSEL:] Tell us about that.

"[MOTHER:] He's told me that—that he's—that he's suffocate—you know, put his hands over his mouth so it's suffocating basically, so he'd stop screaming because [the child] would have, you know—like [the child] didn't like him, what he was doing, or I mean didn't want to do something, then he'd have a tantrum—

"[DEFENSE COUNSEL:] And how did—

"[MOTHER:] —and he would be screaming.

"[DEFENSE COUNSEL:] How did [the child] come by the term suffocate?

"[MOTHER:] Huh?

"[DEFENSE COUNSEL:] How did [the child] come by the term suffocate?

"[MOTHER:] Probably because of me because that's what I threatened [the father] to do because he bitch-slapped [the child] so many times, and [the father] would be—pass out all the time face down in the waterbed, and I said that no one would ever know, you could suffocate face down because you're passed out, and I would always push him over so that he would breathe, you know, start breathing again.

"[DEFENSE COUNSEL:] Now, were there occasions when you saw [the father] cause physical injury to [the child]?

"[MOTHER:] Yes.

"[DEFENSE COUNSEL:] Tell us about that.

"[MOTHER:] He bitch-slapped [the child] so hard, I couldn't get him, I couldn't get to [the child]. I was in the kitchen, and I don't know, to that door, and he hit him so hard [that the child] didn't know what happened, and he hit the floor, the wood floor, and he's screaming, and that's when I, you know, threatened [the father] again, and he'd

be always drunk, and I came home, I had to quit school
* * *."

Later in her testimony, the mother testified that the child's
father had had no contact with the child for about a year
before the alleged incident with defendant.

█      Defendant concedes that the child's father could not
have caused the injuries suffered by child on April 24, 2006.
However, according to defendant, the child had difficulty in
differentiating between his father and defendant in his
thought processes. Thus, in defendant's view, the evidence of
the past abuse of child by his father is relevant to demon-
strate that the child was incorrectly attributing the injuries
he had suffered on April 24, 2006, to defendant. OEC 402 pro-
vides that all relevant evidence is admissible except as other-
wise provided by the Oregon Evidence Code, Oregon statu-
tory and decisional law, and the constitutions of the State of
Oregon and the United States. OEC 401 defines "relevant
evidence" as evidence "having any tendency to make the exis-
tence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be
without the evidence." The question in this case, as properly
framed, is whether the child's mother's testimony regarding
the actions of the child's father toward the child has a ten-
dency to make the child's testimony less credible. If so, then
the evidence was properly admissible to impeach the child's
testimony.

      We conclude that the mother's testimony—that the
child's father slapped him numerous times during a time
period that ended a year before the incident occurred in this
case—was not relevant, under OEC 401, to impeach the
child's testimony about who struck him on April 24, 2006. We
reach that conclusion because there is no evidence from
which a rational factfinder could find or infer from mother's
testimony and the child's statement to Pettitt that the child
confused defendant with his father in his memory with
respect to the source of his injuries that are subject of the
charges against defendant. The fact that the child may have
confused defendant with his father generally does not make
the evidence of the father's past abuse probative of the child's
credibility about who or what injured him on April 24, 2006,

without additional evidence of a nexus in the child's thought processes or memory between those events and the injuries leading to defendant's convictions. It necessarily follows that the mother's excluded testimony had no tendency to make the existence of a fact of consequence—the child's credibility concerning the identification of defendant—more or less probable. *See State v. Hampton*, 317 Or 251, 255, 855 P2d 621 (1993) (holding that, so long as the inference from a fact in evidence proposed by the proponent of the admissibility of the evidence is reasonable, the evidence is admissible under OEC 401). Consequently, the trial court did not err when it excluded the proffered testimony.

Remanded for resentencing; otherwise affirmed.